May it please the Court, my name is Gene Iredale, and with Grace, John, and Julia Yu, I represent the plaintiffs in this case. I would like to discuss with the Court the statute which I think controls the outcome in this case, as well as four separate reasons why Egan does not avail the defendant, Metropolitan Interpreter, in its position. May I just inquire one thing with the Court's permission? We did submit a Rule 28J letter earlier this week. We submitted it on Monday in response to the Court's notation and order regarding the Zinali case, and we had submitted it because we're going to be discussing some of the additional cases that we researched in that regard. Let me, if I could, start with the statute. The Employee Polygraph Protection Act is found at 29 U.S.C. 2001-2009. It was passed in 1988. It was a comprehensive congressional enactment that was designed to regulate the use of polygraphs in the context of employment, including employment involving the private persons who work for government contractors. Section 2002 sets out three of the sections that Metropolitan violated in this case. Subsection 1 prohibits any employer from requesting, suggesting, requiring, or causing, directly or indirectly, any employee to take a polygraph. The second section prohibits accepting, using, referring to, any information gained through a polygraph. And Section 2002, sub 3, forbids discriminating against, disciplining, discharging, or denying employment to anyone on the basis of a polygraph or the refusal to take a polygraph. Section 2003 requires that the rights conferred by the EPPA be posted in the place of employment. Section 2004 confers powers on the Secretary of Labor to investigate and gives him subpoena authority. Section 2005 sets out the enforcement scheme of the statute. It provides for an administrative proceeding before the Secretary. It gives the Secretary of Labor authority to go into federal court to seek an injunction. And most importantly, in 2005 subsection C, provides a private right of action and confers on the district court the authority to grant the relief for the violation of the statute. Section 2006 is especially important here. Section 2006, together with the related CFRs, and I hope you will forgive me, I should have referred to court, we attached the statute in the appendix to the blue brief, to our brief. The text is there. Section 2006 provides that with respect to government employees, both state and federal, the government may polygraph its own employees, federal employees. There's no prescription on that. And it does, however, especially when you read it in connection with the two regulations, which are 801.10 subsection D and 801.11 of 29 CFR, essentially says this, and this is what the administrative findings are and this is what the courts have polygraphed its own employees, unless it falls within an exemption as set forth in 2006 B and C, it may not polygraph the employees of a private contractor. They're interesting since the other side raises Egan. Egan was decided in February of 1988 and the statute passed the Congress three and I suggest that what the Congress did was essentially to embody the holding of Egan in the statute by setting out specific exemptions that the Congress had decided should apply. So, for instance, under section B, any private contractor who works for any private individual who works for a contractor who has a contract with the Department of Defense may be polygraphed. Any private person who works for a contractor who has a contract with the Department of Energy regarding atomic nuclear defense may be polygraphed. There's an exception for polygraphing consultants or contractor employees who work for the FBI in a counterintelligence or intelligence capacity. In addition, the employees of private contractors who work for the CIA, the DIA, the Defense Intelligence Agency, and the NSA may be polygraphed. Finally, the statute says if an employee of a contractor is going to have access to classified information at the level of top secret or to what is called a special access program, which refers to classified information within the executive branch, that employee may be polygraphed. Judge Miller in the court below found that the statutory scheme here precluded the DEA from administering polygraphs to the private persons who were employees of Metropolitan. Now, if I could, since Metropolitan raises the issue under Egan, I need to address why Egan does not prohibit us from going forward and does not deprive this court nor the district court of jurisdiction. In that regard, we cited in the 28J letter a case called Hale v. Johnson. That is a in determining the scope of Egan, you look to the statute. And in the Hale v. Johnson case, the Sixth Circuit said the Rehabilitation Act does not incorporate a provision from Title VII, which allows the government to exclude people from security access without worrying about being the subject of a Title VII action. Since the Rehabilitation Act, on its face, says the court has jurisdiction and did not include that exclusion, similar to the exemptions under 2006 of 29 U.S.C. I just discussed, the court said there is complete jurisdiction. Egan does not statute, considerations of national security should preclude a court from, actually it was the Merit Systems Protection Board, but this court in a later decision held it to be the same rule with respect to Article III judges, should not second guess a security determination. And if there is a statute, however, if the Congress has acted as it acted in the EPPA, and as it acted through the enactment of that statute and the specification of exemptions, none of which apply here, that is to say the DEA is not given an exemption. In addition, there's a second reason why Egan does not apply. Egan does not apply here, because... Well, with regard to whether Egan applies, do we need to go outside of our circuit? Because we've got a case, Zanali, in the Ninth Circuit. How do you think that applies to this case? In two ways, Judge Nguyen. In the first way, the language in Zanali says it will be the rare case in which a private contractor can successfully raise an Egan defense. And secondly, because in Zanali, the court made very clear that if the contractor is raising the government's argument, but the government's position doesn't support the contractor's position, Egan is not applicable. In this case, I need to point something out, and that is that Metropolitan is in effect trying to be more Catholic than the Pope. That is to say, Metropolitan is raising the government's argument, and the government in this case never raised that issue. In other words, the Egan issue is really the government's issue. The government, having examined the statute, having looked at the facts, resolved this case with us. Now, I appreciate that a settlement without the admission of any fault does not necessarily amount to a reasoned decision of a court, but the government, after having looked at this, said, we agree. We will reevaluate the access status of the plaintiffs without regard to the polygraph. Now, in that regard, I need to say this. Even though what is involved in this case is not classified information, is not secret, confidential, or top-secret information, and therefore does not fall under any of the ambit of the cases about which the defendant speaks, nonetheless, we say that it is important that sensitive information, law-important information, be preserved. And we have no quarrel with the position that under the contract in this case and under the law, the government has the right to exclude from access any employee for any reason or for no reason at all. And there is no review process available, except the government may not violate the EPPA. Now, in terms of the relief your clients are seeking, I was looking through the complaint. I did not see them requesting reinstatement of their access to the wire room or security clearance. Is that right? Your Honor, here's what we did with the government. We made a settlement in the case. I believe it's found at page 55 of our excerpt of record. And what we said is, in the agreement, the government agrees to reevaluate each person's status without regard to the polygraph result. And whatever they decide, so long as they act in good faith and there's no, in other words, we're assuming good faith, if they say yes, it's yes. If they say no, it's no. But that was part of the settlement. That was part of the settlement. In terms of the actual complaint where you're trying to force some result upon them, that was not sought? In no way, no. In other words, when the government was settled out, we did not seek anything from Metropolitan other than money damages. And Metropolitan, by the way, the evidence against them was just overwhelming. The district court judge used that phrase when he said, there is overwhelming evidence that Metropolitan violated the statute. Without Metropolitan's conduct, the damages in this case would not have occurred. Would you discuss your apportionment argument? Yes, I will. You settled for the United States for $500,000. Is that correct? Yes, Judge Wardlaw. And what we say in this regard is the following. As to the appropriate Supreme Court case regarding the F.E.L.A., and I hope you'll forgive me, I can't remember the name. Fine. But they say that in federal labor law cases, the rule is joint and several liability, and there's no provision for contribution. Now, in this case, the district court judge looked to a decision of this court called Ameripride that had to do with damages in a circular case where there's an environmental statute, and this circular statute specifically permits, indeed requires, both apportionment and contribution. The statute in this case has the language in its remedies section that is nearly identical to that in Northwest Airlines, and which is the Equal Pay Act case, and in the Supreme Court decision on the F.E.L.A. And so we say that under that precedent, because neither of those statutes permit an apportionment, that there must be joint and several liability. Now, the actual calculation, Judge Wardlaw, is as follows. They get a credit. In other words, Metropolitan legitimately has a credit for the payment by DEA. That's deducted from the amount they owe. But what happened is that the district court submitted the case to the jury on the issue of who bore more responsibility, Metropolitan or DEA. And even though DEA was not defended by a lawyer, even though there was the proverbial, I'm over, I apologize, may I just complete this? Even though there was the proverbial empty chair, the jury assessed that Metropolitan, this case, had 60% of the liability for the non-economic damage and the government only 40%. And there was substantial testimony from government witnesses that the government was looking to Metropolitan to tell them what the labor law required and whether this program was in fact legal. And Metropolitan, despite many letters and complaints and specific citation to the statute, Metropolitan never told the government there is a legal issue, there's a problem. This should be done another way. The government has the right to protect the sensitivity of law enforcement information. And it has the right, as I say, to help me with figuring out the support. So what was the total amount that the jury awarded? The jury awarded approximately $4 million in both economic and non-economic damages. And the, I'm sorry. So you think, and you think that what the court should have done is just deduct $500,000 and then require Metropolitan to pay the remainder? Yes, deduct that portion of the $500,000 that went to the plaintiffs, which was about $25,000 each for the nine plaintiffs. And they get a credit for that on the judgment of the jury as to the total damages. Notwithstanding the jury's apportionment of responsibility. That is correct, Judge Warlaw. That was the position that we took. Finally, may I just say one thing? This case really has to do with access to the DEA wire room. And in a case that we also cite before the court, which is called a Toy versus Holder, a Fifth Circuit case, that court specifically held that on issues of access, Egan does not apply. Thank you so much. Good morning. Raul Martinez for Metropolitan Interpreters and Translators. Just backtracking since you were on the issue of apportionment. I think our main argument was that under the EPPA, the court has legal and equitable powers to decide how to award damages. It's Section 2005C1, and it says the court may award a prevailing plaintiff such legal or equitable relief as may be appropriate. I think the gist of that section is to give the district court discretion into how to apportion damages. There's nothing specifically on this issue. Sorry, which section were you reading from? That's 2005C1. Okay. We cited it in our principal brief as well. Yeah, I have it. Thank you. But if I can turn to the Egan issue and Zainali, which appears to be concerning the court in view of the court's letter last week. I don't think Zainali applies, but to understand that, let me first talk about what Egan stands for, the basic principles behind Egan. Egan holds that a grant of a security clearance to a particular employee is a sensitive and inherently discretionary judgment call. As a result, that decision is committed by law to the appropriate agency of the executive branch. That's the first principle, which is the idea of providing great deference to what the executive branch, the DA in this case, does with respect to security clearances. Egan also holds that the executive branch has broad discretion in making security clearance decisions. And the reason for this is that in making a security clearance decision, the agency has to make a predictive judgment about the future behavior of the applicant. Is the applicant somebody who's trustworthy, who's honest, etc.? So that's Egan. Now, Zainali addressed a very unique situation, a narrow situation in an employment discrimination case. And what it held was that if there's a challenge to the security clearance being a bona fide employment qualification requirement, that's the focus. In other words, is that a bona fide requirement to have somebody go through a security clearance? Now, that's a rather narrow holding. Nobody in this case disputes that the requirement of a security clearance for the monitors, for the linguists in this case, did not require, legitimately require, a security clearance. Because these people were working in wire rooms, they're translating communications from drug cartels along the border. So that is the issue. Is this a genuine bona fide requirement for the employment? It is. Now, the second aspect of Zainali is a question of whether the termination was pretextual. I'm quoting from the Zainali opinion. The court says, Zainali does not contend that the Department of Defense or any other agent of the executive branch improperly denied his application for a security clearance. Rather, Zainali contends that Raytheon's security clearance requirement was not a bona fide job requirement and that Raytheon used the government security clearance decision as a pretext for terminating Zainali. We don't have a pretextual issue because the hundred employees were required to go through polygraph examinations. Seventy of them kept their jobs. So it wasn't used as a pretext. So Zainali really doesn't apply in this context because you're not challenging... Egan really talks about precluding review of the substance of a decision to deny security clearance. And so part of Zainali's analysis is that particular employer wasn't really involved in the denial of security clearances. So the substance of those decisions really never come into play given the allegations of Zainali. Why isn't that true here? Because as I understand it from the record, Metropolitan really didn't play any role in the denial of the security clearance either. That was taken care of solely by the DEA. Well, on the question of whether it applies to Metropolitan, the Beatty v. Boeing case involves a contractor working for Boeing. And in that situation, the court ruled that Egan applied. But I think the concern that Your Honor has is the question of whether the security clearance decision in this case goes to the merits. Because that's the language in Zainali. It says federal courts have jurisdiction to decide claims that do not necessarily require consideration of the merits of a security clearance decision as long as they remain vigilant not to question the motivation behind the decision to deny security clearance. In this case, there is a question of the merits and there is a question of the motivation. The challenge to the merits is the whole concept here that plaintiffs are saying that polygraphs are not reliable. You can't trust them. They also argue that notwithstanding the polygraphs that many of the employees were falsely accused of being dishonest and not being truthful. All of that goes to the merits of the security clearance decision. They also allege in their complaint that this is paragraph 107 on ER-686. It says, Metropolitan discharged, disciplined, and discriminated against the plaintiffs based on the results of the lie detector test or their refusal to submit to a test. So the fact that they allege that the results of the tests are an issue, that goes to the merits of the security clearance determination. Counselor, I'm going to ask you a hypothetical. Let's assume that Metro was going to apply for a new contract with an agency that's not covered under one of the exceptions. Let's say DEA put out a post saying, hey, look, we have a new task force. We're taking bids from companies to provide interpreters. And Metro told its employees, look, we really want this contract and we're going to be in a much better place to get it if all of our interpreters have taken polygraphs and passed them. So I think we're going to be in a much better shape to get the contract. So Metro then instructs its employees, look, take these polys. We'll get it done. We'll submit it to the DEA. We're going to be the number one bid and we're going to get it. If those were the facts of this case, would they have a claim against Metro? I think that's totally different. And the reason is the NISPOM. That's the National Industrial Security Program Operating Manual, which specifically authorizes government agencies in security clearance situations to polygraph the employees as needed, as necessary as what it says. How about this hypothetical I gave you? In your hypothetical in advance, I don't think that the employer could require that because there's no contract. Right. But they tell them we're hoping to get this. I guess what I'm trying to say, how is that ultimately different from this case where Metro is telling its employees, look, we want to keep this contract so we better do what the government is telling us to do? In that situation, you don't have some polygraphers failing and others not failing. I think the example you're... But that shouldn't matter whether... I mean, I don't think the EPPA says you have a cause of action only if you pass the poly. I think it's if you're required to take it. Yeah, I understand that. And our concern has to do with jurisdiction, subject matter jurisdiction. And in deciding whether EPA applies, you're stepping on the toes of the executive branch to make decisions on security clearances. But if they never raised that in this case, I guess I'm just trying to see how are their toes being stepped on here? Because as I understand it, the relief they're seeking is not to have the security clearance reinstated. It's that you may just go through a polygraph and the EPPA says you can't. The government settled. We don't know why they settled. We can't speculate. But just take the complaint as it's alleged. I don't think they're seeking to have their security clearance reinstated, are they? No, they wanted damages. Right. They had an opportunity to do that and they didn't seek it. But I guess because they're not seeking reinstatement of the security clearance, they're basically saying we're not arguing to get it back. They're saying you put us through a process that you weren't allowed to put us through. Why is that not a correct reading of the complaint? I think it's a correct reading of the complaint. But then if it's a correct reading of the complaint, then how do we even get to the EGIN concerns that you've laid out? The question of security clearances and subject matter jurisdiction is to the core of EGIN. But I guess I'm not trying to argue with you. I'm just trying to understand how does this case, if they're not asking for their security clearance to be reinstated or reevaluated, they're just saying you put us through a test that Congress says you can't put us through. We don't care what the result was. You just put us through this really awful test. They do care what the result was because the government's defense, had they been forced to do it, had there been subject matter jurisdiction and their hands hadn't been tied, would argue that the results of the polygraphs were reliable. Right. But that's the whole point. But that might go to how much the damages are. Again, what I'm trying to understand here is that how is their case, as they've alleged it, how does it call into question the government's security clearance? Well, again, it's paragraph 107 where they say that their security clearance was improperly denied. But are they asking for it to be reinstated? No, they're not asking it to be reinstated, but it's the basis for their claim of damages. So you really have to go to the core of to decide the case. And you have to look at whether polygraphs are reliable or not. EPA says, no, they're not reliable. And that's Congress's determination. The federal government and the agencies and the NISPOM say, no, they are reliable for national security purposes. So, but when Congress enacted this law, they enacted it about a year after Egan was decided. And there's clearly going to be overlap between polygraphs and security clearances. So how do you explain... The NISPOM was decided long before either of those. The NISPOM has been in effect for years. National Security Industrial Protection Program. And this is designed to address a situation where contractors, like Metropolitan, are exposed to sensitive information. So it's really a clash between EPA and the federal government's regulations under executive order, which is where the NISPOM comes through. That's the core issue in this case. What prevails? And I suggest that in a case that involves national security issues, the EPA statute has given way to the government's prerogative to conduct these examinations. Do you have any cases where a private employer has been able to assert the government's privilege, not privilege, but interest? The Beatty versus Boeing case. I think that's, I believe it's a 10th Circuit case where the employee of a federal contractor made a challenge on the security clearance determination, and that's cited in our fourth brief, and I believe in our first brief. I think we covered it there. And I think that is a core issue before you get to apportionment, you get to damages. That's what you have to focus on. And, you know, I want to quote, there's a case called Dorfmant and Justice Kaczynski, or Judge Kaczynski, in his concurring opinion says, the Constitution erects barriers to judicial review that even Congress may not override. It's a separation of powers issue. This is a clash between the executive branch and Congress as to who controls the right to conduct examinations that require polygraphs. Who wins? All of these people had security clearances to access the facility. They all filled out those forms that are generally filled out, right? They all were clear. They all had SF-86s. Additional requirement that the DEA imposed on the basis of some suspicion as to some other person that they were leaking some of the information from the recordings. The basis for that is that the BPA, this is the main contract between Metropolitan and the government, allows this kind of re-examination of a security clearance. So once you grant a security clearance, you're subject to being re-evaluated almost on an as-needed basis. So they have the right to do that. Now, the DEA chose to do it through polygraphs. Now, the question in this case is, can they do that legally or are they overstepping their bounds because of BPA? And our point is that because of separation of powers, that the discretion under EGAN of the executive branch has to prevail, that that's what governs this case. Why can't Metropolitan say, no, that would be a violation of EPA? So you can't require, we can't require these, we can't require our employees? They didn't think they were violating EPA because they believed that there was the full right and authority under the law of the federal government to conduct polygraphs of their employees. That's how they saw it. Legally, there was a big question about that. But what it comes down to, in our view, is EGAN and whether EGAN applies to this case. You have to keep in mind the two aspects here. One, you have to prepare, the applicant has to file, submit a security clearance application, SF-86. That, in and of itself, tells you that judges should not intrude in those kinds of determinations by the government as to who is viewed as a threat to national security, who is not viewed as a threat to national security. EGAN says courts can't get into that examination. Now, the extension here is that now the government decided to use polygraphs. We contend that that also is encompassed by the prerogative of the federal government to decide how they're going to conduct national security examinations without having the courts intrude on that prerogative, which we really believe is a violation of EGAN. The focus is on EGAN, not so much on Zainali and Beatty v. Boeing. Well, you know, I think there are two extremes, right? The one extreme is the EGAN situation where you do have to basically, the review by the courts goes squarely to the decision to grant or deny security clearances. The other end of the extreme is Judge Owen's example, which I didn't really hear a definitive answer to, but I suspect the employer could be sued for that. EGAN wouldn't apply because the executive branch made no decisions and played no role in requesting the polygraphs. Zainali is the in-between situation, and I think this case is also the in-between situation where we're called upon to answer the question of whether you can separate Metropolitan's conduct from the DEA's request is that the polygraphs were driven by security clearance re-evaluation examination. So it's not a situation where the employer, Judge Owens, is acting on his own or its own to polygraph employees. This is, in the facts of this case, all entirely driven by the DEA. But it seems to me, Counsel, in Beatty v. Boeing, there's a fundamental difference. In Beatty v. Boeing, Boeing had been delegated the power by the Air Force to make security clearance decisions, correct? I don't, I think they had some power to do it. In the case now, it says, Boeing's, this case involves a private party rather than the government agency. However, Boeing's limited authority to grant or deny excorded access clearance derives solely from its contract with the Air Force. Right. And under that contract, they perhaps had the right to conduct security. That's not this case. No, but the fact remains that it was a security clearance determination by the DEA, by the federal government. Your facts are tougher because Metropolitan played no role, as far as I can tell, in granting or denying the security clearances. Not according to plaintiffs. They're taking the position. Well, your role is to facilitate scheduling, telling employees that they needed to do it, saying that they're going to be laid off if they don't. There's lots of conduct that's alleged by Metropolitan that were, the evidence was presented at trial, but it doesn't go as far as the facts of the other case, because ultimately, Metropolitan played no role in the decision. I suggest that's a distinction without a difference, that the fact that there's an examination for security clearance by the DEA and not by the contractor is even stronger facts for our position, because you have a direct involvement of a government agency. The one step removed is where you have the contractor making the security clearance determinations. Sure, it's distinguishable, but it's a distinction without a difference. All right. Thank you, counsel, for your time. I'll give you one more minute. Thank you very much, Your Honor. I just need to say a couple of things. Let me, if I could, read what Metropolitan said. This is on page 180 of the excerpt of record. The conduct of DEA and Metropolitan can be separated as evidenced by the jury's apportionment of plaintiff's injuries based on the damage each party caused. That's the position they took in the court below, and that can be found at ER 179-180. With respect to the other things, I just need to say this. What Metropolitan has done in its brief, they never raised this issue in the court below, so it could have been addressed. They've conflated the specialized security clearance language that Egan uses with general common parlance of what a security clearance is. When Egan spoke of security clearance, it talked about access to classified information, specifically top secret, secret, or confidential. The information here is another kind, law enforcement sensitive, and what they're trying to do is to take Egan from the national defense context and put it in law enforcement. There's no case law basis to do that. I've exceeded my time. Thank you so much. Thank you very much, counsel. Bates v. Metropolitan Interpreters and Translators is submitted, and this session of the court is adjourned for today.
judges: Wardlaw, Nguyen, Owens